IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

Shilla Industrial Co., Ltd.                                                                 PLAINTIFF

V.                                                                      CIVIL ACTION NO.: 3:23CV138-GHD-JMV

WAREHOUSE 72, L.L.C.; VALLEY TOOL, INC;
CAYCE WASHINGTON; MICHELLE WASHINGTON;
FRANK HYDE, JR.; and SASHA HYDE                                                             DEFENDENTS

**COMPLAINT**

COME NOW, Shilla Industrial Co., Ltd., a foreign corporation and Plaintiff herein, by and through the undersigned counsel, and files its Complaint against the above-named Defendants, as follows:

### I. PARTIES

1.  Plaintiff Shilla Industrial Co., Ltd. (herein after "Shilla" or "Plaintiff") is a foreign corporation.

2.  Warehouse 72, LLC is a domestic entity organized and existing under the laws of Mississippi that may be served in accord with the Mississippi Rules of Civil Procedure.

3.  Valley Tool, LLC is a domestic entity organized and existing under the laws of Mississippi that may be served in accord with the Mississippi Rules of Civil Procedure.

4.  Defendant Cayce Washington is a member and officer of Warehouse 72 and Valley Tool and an adult resident citizen of Mississippi. He may be served wherever he may be found and in accord with the Mississippi Rules of Civil Procedure.

5. Defendant Michelle Washington is a member and officer of Warehouse 72 and Valley Tool and an adult resident citizen of Mississippi. She may be served wherever she may be found and in accord with the Mississippi Rules of Civil Procedure.

6. Defendant Frank Hyde is a member and officer of Warehouse 72 and Hyde Excavation and an adult resident citizen of Mississippi. He may be served wherever he may be found and in accord with the Mississippi Rules of Civil Procedure.

7. Defendant Sasha Hyde is a member and officer of Warehouse 72 and an adult resident citizen of Mississippi. She may be served wherever she may be found and in accord with the Mississippi Rules of Civil Procedure.

8. John Does 1, 2, and 3 are other persons or entities that are vicariously or directly liable for the injuries and damages to Shilla and/or for the actions or inactions of the named Defendants and/or for the design and operation of the subject warehouse. Said unknown Defendants, if any, are currently unknown after diligent search and investigation.

## II. JURISDICTION AND VENUE

9. Article III of the Constitution provides for jurisdiction in the federal courts over all "Controversies . . . 'between a State, or the Citizens thereof, and foreign States, Citizens, or Subjects,'" U.S. CONST. art. III, § 2, cl. 1. The diversity jurisdiction statute, 28 U.S.C. § 1332(a)(2) confers diversity jurisdiction in civil actions between "citizens of a State and citizens or subjects of a foreign state," excepting lawful permanent residents domiciled in the same state. See *Servicios Azucareros de Venezuela, C.A. V. John Deere Thibodeaux, Inc.*, 702 F. 3d 794 (5th Cir. 2012).

10. Venue is proper in accordance with 28 U.S.C. 1391 because at least one defendant resides in this district and a substantial act or omission occurred in this district.

### III.  FACTUAL BACKGROUND

11.  Plaintiff incorporates herein by reference the averments contained in the foregoing paragraphs of the Complaint.

12.  Shilla is a Korean-based entity who provides products to the automobile parts manufacturing industry, including the manufacturers and suppliers who operate in Mississippi and other southern states.  On July 30, 2022, Shilla had approximately $5,000,000.00 worth of business property stored at a warehouse owned and operated by the Defendants, that warehouse being operated under the name "Warehouse 72."

13.  Defendants are the individual and corporate owners, officers and operators of the warehousing business called "Warehouse 72."  Warehouse 72's physical warehouse is located in Yalobusha County, Mississippi.  Warehouse 72 claims it is "majority woman owned."

14.  Valley Tool, LLC is a warehousing business that operated under the name Valley Tool in Yalobusha County prior to the opening of Warehouse 72.  Valley Tool's warehousing business has been merged into the warehouse business called "Warehouse 72."

15.  Cayce and Michelle Washington, husband and wife, are the only two members or officers of Valley Tool, LLC.

16.  Warehouse 72, LLC was formed on November 20, 2015.  Cayce and Michelle Washington, husband and wife, and Frank and Sasha Hyde, husband and wife, are the four members and officers of Warehouse 72, LLC.

17.  Only five days after the November 20, 2015 formation of Warehouse 72, LLC, the newly created Warehouse 72, LLC purchased the property and building in the W.E. Gardiner Industrial Park in Water Valley, Mississippi located at 121 Industrial Park Drive, Water Valley Mississippi 38965.  Warehouse 72, LLC was able to accomplish this immediate purchase of

property with the professional and financial support of Valley Tool, LLC and its owners and officers who were experienced in warehousing. The immediate purchase of the property was accomplished by Valley Tool moving its warehousing operation into Warehouse 72.

18. Ownership of the property was transferred to Warehouse 72, LLC by General Warranty Deed on November 25, 2015, only five days after Warehouse 72, LLC was formed. The purchase paperwork was signed by Cayce Washington, one of the two owners of Valley Tool, LLC and one of the four owners of Warehouse 72, LLC.

19. Warehousing operations at Warehouse 72 began almost immediately after the property at 121 Industrial Park Drive was under the control of the Washingtons and the Hydes. Valley Tool, LLC merged its warehousing operation into Warehouse 72 which constitutes a continuation of Valley Tool, LLC's business into Warehouse 72. Warehouse 72 continued to store property under agreements between customers and Valley Tool, LLC.

20. The Washingtons and the Hydes were personally involved in the day-to-day operation of their warehousing business. Valley Tool and its owners and officers continued Valley Tool's means and methods of warehouse operations under the new corporate entity Warehouse 72, LLC.

21. The warehouse originally operated by Valley Tool, LLC under the Washingtons did not have any heat, fire or smoke detection devices, no heat or fire suppression devices, nor any lightning protection systems. Valley Tool, LLC's means and methods of operation in these, and other, respects were continued into the operation of Warehouse 72 with the consent of the owners and officers of Warehouse 72, LLC.

22. The owners and officers of Warehouse 72 did not equip Warehouse 72 with any heat, fire or smoke detection devices or any heat or fire suppression devices. The owners and

operators of Warehouse 72 did not equip the building with any lightning protection systems. These protective devices were readily available in 2015 to present.

23. Upon information and belief, Valley Tool did not have a Chief Risk Officer, Chief Risk Management Officer or similar position; did not employ outside risk professionals; did not undergo risk assessments or audits; or otherwise manage its operations to identify and eliminate risks. The owners and operators of Warehouse 72, LLC carried this management philosophy and manner of operations into Warehouse 72. The owners and officers of Warehouse 72 did not engage any consultants to assist them in operating Warehouse 72 in conformity with industry standards. The owners and officers of Warehouse 72 did not engage any fire protection experts to advise them in identifying and responding to fire risks. The owners and officers of Warehouse 72 did not advise customers that the warehouse did not engage in risk management practices.

24. In July, 2022, the business known as "Warehouse 72" Was being jointly operated by Valley Tool, LLC and Warehouse 72, LLC.

25. Surveillance video from a building near Warehouse 72 shows that, at approximately 5:16 p.m. on July 30, 2022, Warehouse 72 was struck by lightning. The lightning strike started a small fire in Warehouse 72. The fire progressed and grew at a very slow rate over at least two hours.

26. Over two hours after the fire started, at 7:30 p.m., a law enforcement officer patrolling the industrial park noticed smoke coming from Warehouse 72 and reported it to the fire department. The fire department arrived on scene at 7:37 p.m.

27. Upon arrival at the scene, fire fighters began to try to put out the fire. Firefighting efforts were hindered by the delayed notice and Warehouse 72's practice of blocking means of ingress and egress of the warehouse.

28. Ultimately, the fire could not be extinguished and firefighters resigned themselves to preventing the spread of the fire beyond the warehouse.

29. Shilla lost approximately $5,000,000.00 of property that was in the warehouse pursuant to agreement with the Defendants.

30. To satisfy its business obligations, Shilla had to fly replacement materials to America and expedite ground transportation, which cost approximately $600,000.00.

31. Shilla suffered other consequential and incidental losses which include, but are not limited to: cost of investigating the fire; inventory management expenses caused by the fire and property loss; lost goodwill in the industry; attorney's fees; litigation expenses; and costs of court.

32. Shilla intends to uncover other facts supporting its claims against all corporate and individual Defendants during discovery.

33. Other facts will be shown at trial where this Complaint will be amended to confirm to the evidence.

### IV. CAUSES OF ACTION.

1. **Piercing the Corporate Veil of Valley Tool, LLC and Warehouse 72, LLC for Liability on Cayce Washington, Michelle Washington, Frank Hyde and Sasha Hyde.**

34. Plaintiff incorporates herein by reference the averments contained in the foregoing paragraphs of the Complaint.

35. Prior to filing this Complaint, Valley Tool, LLC and Warehouse 72, LLC failed to provide proof of insurance coverage sufficient to cover the losses sustained by Shilla. These entities operated a warehouse where they stored a tremendous amount of valuable property. These entities and their owners and officers expressly promised to carry insurance that would reimburse customers if the warehouse was responsible for damage to property. Those entities and their owners and officers, however, breached that express promise. To the extent that the claims

asserted herein exceed the amount of available insurance coverage, Shilla seeks to pierce the corporate veil of Valley Tool, LLC and Warehouse 72, LLC to impute liability on its members, owners and officers Cayce Washington, Michelle Washington, Frank Hyde and Sasha Hyde.

36. In the event Valley Tool and/or Warehouse 72 fails to have adequate insurance coverage for the alleged damage and the individual Defendants raise and rely on the veil of an Entity, Plaintiff alleges that, collectively and individually, the individual Defendants are the sole or primary owners, members officers, directors and employees of that Entity; that they are together or one of them is the sole or primary decision maker(s) for that entity; and that all or most income of that Entity accrues to the benefit of them.

37. In the event Valley Tool and/or Warehouse 72 fails to have adequate insurance coverage for the alleged damage and the individual Defendants raise and rely on the veil of an Entity, Plaintiff alleges that the Entity does not have an operating agreement that controls the corporate decision-making process nor the operational formalities of the Entity; rather, there are no outside decision-makers and all decisions are made by the Washingtons and Hydes without any corporate control nor control or oversight by any board or other owners or members. The Washingtons and the Hydes are the sole decision-makers, and their decisions are not governed by corporate rules.

38. Plaintiff was frustrated in its expectations and had a reasonable expectation of performance from Warehouse. In promotional materials provided by Cayce Washington, Warehouse 72 promised that property damaged due to the warehouse's fault would be covered by insurance. The materials provided by Cayce Washington in October 2021 expressly promise that the Warehouse "will have insurance" for product damaged by the Warehouse's action. In the event

that there is no such insurance and any entity involved lacks assets to satisfy judgment, disregard of that entity is necessary to fulfill Shilla's reasonable expectations.

39. Any involved Entity, through the direction and failure of the individual Defendants, have disregarded corporate formalities and abused the corporate form to such an extent that the corporate veil of that Entity should be cast aside and liability should be imputed to the individual Defendants, jointly and severally.

40. In the event Valley Tool and/or Warehouse 72 fails to have adequate insurance coverage for the alleged damage and the individual Defendants raise and rely on the veil of an Entity, Plaintiff alleges that an equitable result is achieved by disregarding the corporate formalities and holding the individual defendant's personally liable for any fault of that Entity as that entity has no or insufficient reasonably collectible assets, and without piercing the corporate veil, Plaintiff will be unable to recover its judgment.

41. In the event Valley Tool and/or Warehouse 72 fails to have adequate insurance coverage for the alleged damage and the individual Defendants raise and rely on the veil of an Entity, alternatively, the individual Defendants operated the entity in such a fashion that the entity is nothing more than their alter ego. Accordingly, the corporate formality should be cast aside, and liability imputed to the individual Defendants, jointly and severally.

2. **Negligence and Negligence Per Se of Valley Tool, Warehouse 72 and the Individual Defendants who Operated the Warehouse.**

42. Plaintiff incorporates herein by reference the averments contained in the foregoing paragraphs of the Complaint.

43. Under general negligence principles, every business has the general duty to exercise reasonable care in carrying out business activities. The Defendants were bound to exercise reasonable care in the storage and possession of Shilla's property.

44. Mississippi law also imposes a statutory duty of reasonable care on warehouses. Miss. Code. Ann. § 75-7-204(a) provides:

> A warehouse is liable for damages for loss of or injury to the goods caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances. However, unless otherwise agreed, the warehouse is not liable for damages that could not have been avoided by the exercise of that care.

This statute was designed to protect Shilla from the type of harm Shilla suffered. Violation of this statutory duty is negligence *per se*.

45. The common law of bailment also imposes a duty of reasonable care on Defendants. An entity or individual holding the property of another "is bound to that degree of diligence which the manner and nature of the bailment make it reasonable to expect of him." *Harry Dole Dodge of Pascagoula, Inc. v. Cox*, 246 So. 2d 918, 919 (Miss. 1971).

46. Where corporate owners or officers are personally involved in negligent decisions or actions, those individuals may be held personally liable. The individual Defendants engaged in the tortious activity alleged herein and may therefore be held personally liable for their actions. See *McGee v. Comprehensive Radiology Servs. PLLC*, 340 So. 3d 328 (Miss. 2022).

47. Shilla delivered its property to Warehouse 72 in a good condition. The damage done to Shilla's property while under the possession and control of Warehouse 72 creates a *prima facia* presumption of negligence. Shilla is entitled to a presumption of negligence at trial.

48. In addition to all duties otherwise set forth herein, Defendant's duties to Shilla include, but are not limited to: the duty of reasonable care in the storage and protection of its property under statute and common law; the expressed duty to provide recovery for damage to Shilla's property caused by the warehouse; the duty to return Shilla's property to it in good condition; the duty to operate its business in a reasonably safe manner; the duty to warn Shilla of risks and danger to its property; and all other duties, imposed and assumed, provided by law.

49. Defendants breached those duties by the actions and inactions alleged herein, which include, but are not limited to: the failure to provide heat, smoke and fire detection devices; the failure to provide fire suppression devices; the failure to provide lightning protection devices; the failure to properly space warehouse inventory; the failure to properly use non-flammable storage materials; the overuse of flammable storage materials; the organization of the warehouse in way that blocked methods of ingress and egress; the failure to operate the warehouse in a reasonably prudent manner; the failure to warn Shilla of risks and dangers to Shilla's property; the failure to follow and conform to industry standards; the failure to identify and either warn of or eliminate risks created by their operating procedures; and other actions and inactions which will be shown at trial where this Complaint will be amended to confirm to the evidence.

50. Defendants' breaches proximately and legally caused the damage to Shilla's property and the resulting consequential and incidental losses. The damages and losses alleged herein were the foreseeable result of defendant's negligence and negligence *per se*.

51. The fire was started by lightning, but the fire would not have started at all if Defendants had reasonably protected the building from lightning.

52. While the fire was started by lightning, the fire would not have progressed outside of a limited, controlled area but for the Defendants' negligence.

53. Defendants' negligence alleged in this Complaint caused the damages alleged herein. Further act and inactions may be revealed during discovery and presented at trial where this Complaint will be amended to confirm to the evidence.

3. **UCC Claim.**

54. Plaintiff incorporates herein by reference the averments contained in the foregoing paragraphs of the Complaint.

55. The Defendants are engaged in the business of storing goods for hire. The Defendants' took physical possession of Shilla's property and agreed to store Shilla's property for an indefinite period. Shilla's property was in good condition when the Defendants took possession.

56. The Defendants operated without a written contract. Defendants did not limit their liability for damages to Shilla's property. Defendant did not impose any time or manner for presenting claims or commencing actions.

57. Defendants and Shilla operated under an oral contract. Defendants made express warranties in communication with Shilla which have been identified herein. The oral contact between the Defendants and Shilla included the implied warranties of good faith and fair dealing.

58. "A warehouse is liable for damages for loss of or injury to the goods caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances. However, unless otherwise agreed, the warehouse is not liable for damages that could not have been avoided by the exercise of that care." Miss. Code. Ann. § 75-7-204(a).

59. Defendants' negligent actions and inactions are alleged throughout this Complaint and incorporated herein by reference. Defendants failed to exercise the care that would be exercised by a reasonably careful person under similar circumstances which constitutes a breach of the UCC. Defendants' actions violated the duty of good faith and fair dealing owed to Shilla.

60. Defendants' failure to satisfy its statutory and contractual obligations of those engaged in the business of storing goods for hire proximately and legally caused Shilla damages. Shilla is allowed to recover all damages available under the UCC and contract law including interests, costs and attorney's fees.

**4.      Bailment.**

61. Plaintiff incorporates herein by reference the averments contained in the foregoing paragraphs of the Complaint. Shilla separately asserts a claim for bailment to the extent necessary to do so.

62. Shilla was the owner of the property. That property was delivered to Warehouse 72 for storage in good condition. Warehouse 72 accepted and stored the property. Warehouse 72, operated and owned by Defendants, was in possession and control of the Shilla property at all relevant times. The relationship between Shilla and Warehouse 72 was for mutual benefit. Shilla received the storage of the property. Warehouse 72 received payment.

63. As bailees, Defendants owed Shilla the duty of reasonable care in the storage of the property. See *Harry Dole Dodge of Pascagoula, Inc. v. Cox*, 246 So. 2d 918, 919 (Miss. 1971) (providing bailee "is bound to that degree of diligence which the manner and nature of the bailment make it reasonable to expect of him.").

64. Shilla's delivery of the property in good condition and subsequent damage creates a *prima facia* presumption of Defendants' negligence. See *Pope v. Andrews*, 361 So. 2d 71, 72 (Miss. 1978). The burden of proof rests on Defendants at trial.

65. If Shilla carries any burden of proving negligence, Shilla shows that Defendants were negligent as bailees by the actions and inactions alleged in this Complaint.

66. Defendants' failure to satisfy their duties as bailees proximately and legally caused Shilla's damages alleged herein.

5. **Breach of Contract.**

67. Plaintiff incorporates herein by reference the averments contained in the foregoing paragraphs of the Complaint.

68. Defendants and Shilla operated under an oral contract. Defendants made express warranties in communication with Shilla which have been identified herein, including the promise to keep the property safe and to provide insurance to cover damage to the property caused by the Defendants. The oral contact between the Defendants and Shilla included the implied warranties of good faith and fair dealing.

69. Defendants breached its Agreement with Shilla as described in this Complaint, including by failing to keep Shilla's property safe; failing to pay Shilla for its damaged property; failing to carry sufficient insurance to cover Shilla's damaged property; failing to perform the agreement in good faith and fairly; failing to exercise due care in the performance of the agreement.

70. Shilla's damages were caused by Defendants' breaches of contract.

6. **Gross Negligence, Wanton or Reckless Disregard for the Safety of Others (Punitive Damages) Against All Defendants.**

71. Plaintiff incorporates herein by reference the averments contained in the foregoing paragraphs of the Complaint as if set forth fully herein.

72. The above-referenced Defendants' actions herein are so negligent and/or reckless as to constitute a willful, wanton or reckless disregard for the safety of the property of others for which punitive damages must be assessed against those Defendants.

73. Defendants knew that fire was a risk to their customers' property and willfully disregarded that risk.

74. Fire, smoke and heat detection systems are common, readily available and relatively inexpensive. Likewise, fire suppression systems are known, available and inexpensive. Lightning protection systems are well known safety features on large metal buildings like Defendants' warehouse. Defendants knew that they could feasibly protect their customers' property from fire.

75. The Defendants' failure to do anything to protect the warehouse and its contents from fire, not even install a fire alarm or even attempt to determine the feasibility of protective systems, evidences a wanton and reckless disregard for the safety of others and others' property and justifies the imposition of punitive damages against them and in favor of the Plaintiff.

76. After the fire, Shilla received a cleaning cost invoice from Hyde Excavation, LLC, an entity completely owned by owners of the warehouse. Upon information and belief, Defendants' clean-up costs were covered by insurance. If Defendants received insurance proceeds for clean up, then charging Shilla for clean-up costs through Hyde Excavation, LLC is unconscionable and further grounds for punitive damages against the Defendants.

77. For these and other reasons that will be shown at trial, Plaintiff therefore pleads that the issue and amount of punitive damages be submitted to the jury for determination against all Defendants

**7.    Damages.**

78. Plaintiff incorporates herein by reference the averments contained in the foregoing paragraphs of the Complaint.

79. The value of the Shilla property being stored at Defendants' warehouse and in Defendants' possession and control at the time of the fire was approximately $5,000,000.00.

80. Shilla's property lost almost all of its marketable value. Defendants have offered to pay Shilla $350,000.00 as the salvage value of Shilla's damaged property. Using Defendants' offer as the actual salvage value of Shilla's property after the fire, which is not admitted herein, Shilla lost approximately $4,650,000.00 in property value as a result of Defendants' actions and inactions.

81. Shilla's increased business and supply chain costs are on-going. In the aftermath of the fire, Shilla had to fly replacement parts from Korea to the United States and expedite ground transportation. These two costs alone are approximately $600,000.00. Shilla has incurred approximately $3,000.00 in employee travel costs. Further costs and damages will be shown at trial.

82. Shilla has incurred and demands recovery for additional costs for investigation, litigation, court costs, attorney's fees and all other consequential or incidental costs, fees, damages or expenses.

83. Shilla demands pre- and post-judgment interest and all other damages allowed by law, including punitive damages as set forth above.

## VI. SUMMARY DEMAND

WHEREFORE, PREMISES CONSIDERED, Shilla Industrial Co., Ltd., demands judgment as set forth above from all Defendants, jointly and/or severally, for actual, compensatory and punitive damages, pre and post-judgment interest, attorneys' fees, costs and expenses in an amount to be determined by a jury and any other relief to which Plaintiff may be entitled in law or in equity.

Respectfully submitted, this the 8th day of May, 2023.

Shilla Industrial Co., Ltd., PLAINTIFF
By and through their counsel of record,

/s/ Mitchell O. Driskell, III
Mitchell O. Driskell, III, #100079
TANNEHILL CARMEAN, PLLC
829 North Lamar Boulevard, Suite #1
Oxford, Mississippi 38655
Telephone (662) 236-9996
Facsimile (662) 234-3949
mitchell@tannehillcarmean.com