UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

SHILLA INDUSTRIAL CO., LTD.                                               PLAINTIFF

vs.                                                                                            Civil No. 3:23-CV-00138-GHD-DAS

WAREHOUSE 72, L.L.C.; CAYCE WASHINGTON;
MICHELLE WASHINGTON;
FRANK HYDE, JR.; AND SASHA HYDE                                DEFENDANTS

**<u>MEMORANDUM OPINION</u>**

Presently before the Court is Defendant WareHouse 72, LLC's Motion for Summary Judgment, Defendants the Washingtons' and the Hydes' Motion for Summary Judgment, Plaintiff Shilla's Motions for Summary Judgment concerning duty and damages, and Defendants' Motion to Exclude Plaintiff's Expert, Phillip Keena. Upon due consideration, the Court finds Warehouse 72's Motion for Summary Judgment should be denied in part and granted in part; the Individual Defendants' Motion for Summary Judgment should be granted; Plaintiff Shilla's Motions for Summary Judgment should be denied; and Defendants' Motion to Exclude Plaintiff's Expert, Phillip Keena should be granted in part. The Court will first address the several motions for summary judgment and then the expert exclusion.

*I.    Factual & Procedural Background*

This matter arises from a lightning strike which caused a warehouse containing automobile parts of substantial worth to burn down. Plaintiff—Shilla Industrial Co., Ltd.—alleges "approximately $5,000,000.00 worth of business property" was stored at WareHouse 72's Water Valley property at the time it burned. [45]. Plaintiff now brings claims under contract, tort, and common law against six defendants. [45]. Shilla Industrial Co., Ltd. ("Plaintiff") is a South Korean

1

corporation that manufactures automobile parts and maintains suppliers in Mississippi and other southern states. [45]. WareHouse 72, LLC ("WareHouse") is a domestic warehousing entity created under Mississippi law by Sasha Hyde (26%), Frank Hyde, Jr. (24%), Michelle Washington (26%), and Cayce Washington (24%). [122]. Although owners, Frank, Michelle, and Cayce do not work directly for the business. [122]. Sasha, however, does some accounting work for WareHouse. [122]. The business provided warehousing services at its 121 Industrial Park Drive location in Water Valley, Mississippi until that warehouse containing Plaintiff's goods burned down in 2022. [122]. It now provides warehousing services at its new location in Charleston, Mississippi. [122].

On the evening of July 30, 2022, lightning struck WareHouse's property at 121 Industrial Park Drive causing a fire at the warehouse. [134]. The warehouse was closed for the weekend at the time, and the fire went unnoticed until a patrolling local police officer saw smoke and called the fire department approximately two hours after the lightning strike. [45]. The fire department arrived shortly thereafter. [45]. Mark McGavock, the Water Valley Fire Chief, stated in his testimony that upon arrival, the fire was at its worst in the southwest corner of the warehouse, but the "building appeared to be fully involved." [117-5]. Whether the warehouse's south door was blocked at the time of the fire has been disputed. Plaintiff disclaimed arguments relevant to that dispute, and Fire Chief McGavock testified the firefighters never attempted entry through that door. [117-5]. Therefore, this dispute is immaterial to the issue at hand.

Prior to the fire, the parties signed a Warehouse Agreement ("the Agreement") effective from December 1, 2021, until November 30, 2024. [122]. The Agreement—a centerpiece to this dispute—defined the expectations between WareHouse and Shilla, and it included a clause under a section entitled "**Insurance**," which stated, "Warehouse 72 does not cover damage in the event of an act of God while in our possession. Tornado, wind, Hurricane, Flooding, Fire from lightning

strike, Earthquake etc." [121-6]. Defendant WareHouse also noted in its briefs that with each transaction Plaintiff received a receipt with language notifying Plaintiff its goods were not insured for acts of God. [122].

After the fire, this litigation followed. Plaintiff sued six Defendants, including WareHouse 72, LLC; Valley Tool, Inc.; Cayce and Michelle Washington; and Frank and Sasha Hyde. Plaintiff has voluntarily dismissed its claims against Valley Tool, Inc. [122]. More specifically and relevant to the instant motions, Plaintiff alleges WareHouse and its owners breached their statutory duty under Miss. Code Ann. § 75-7-204(a); generally breached their duty of care owed under common law negligence; and breached their contract. [122].

## *II. Summary Judgment Standard*

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is

3

a genuine issue for trial.'" *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### *III.    Discussion of Summary Judgment Motions*

### WareHouse 72, LLC's Motion for Summary Judgment

Plaintiff asserts two claims against Defendant WareHouse: a negligence claim and a breach of contract claim. The Court will discuss each in turn using the summary judgment standard already discussed.[1]

### *Plaintiff's Negligence Claim*

Plaintiff's first claim derives from statutory and common law principles. Starting with the statute, Miss. Code Ann. § 75-7-204(a) states:

> A warehouse is liable for damages for loss of or injury to the goods caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances. However, unless otherwise agreed, the warehouse is not liable for damages that could not have been avoided by the exercise of that care.

---

[1] The Court notes at the outset that in this diversity action, the *Erie* doctrine applies; thus, the Court's determinations regarding the Plaintiff's state law claims are guided by Mississippi state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998).

4

Plaintiff argues this statute governs WareHouse's duty and it per se included the installation of a fire detection or protection system. This duty is, of course, a question of fact. *Jordan v. Federal Compress & Warehouse Co.*, 126 So. 31, 33 (Miss. 1930).

Despite its age, *Jordan v. Federal Compress* is surprisingly like the case at hand. There, the plaintiff was storing cotton bales in the defendants' warehouse when it was destroyed by fire along with the cotton. *Id.* at 32. The plaintiff sued under statute contending, "The failure of the [defendants] to install an automatic sprinkler system was such negligence as would render them liable for the loss of his cotton." *Id.* at 33. The court explained it could not find:

> "The [defendants' failure] to install a sprinkler system in [their] warehouse was a breach of [their] statutory duty to the [plaintiff]. What constitutes the care that would be exercised by a reasonably careful owner of similar goods, similarly situated, is a *question of fact*, to be judged by reference to all the circumstances of the particular case."

*Id.* (emphasis added). Therefore, issues concerning a warehouseman's duty is a question of fact for the jury. *Id.* The Mississippi Supreme Court was given a well-developed record with ample evidence of due care to support its ruling. This Court does not have that luxury; therefore, it must retain this issue for the jury and deny summary judgment on the basis of the statute.

We turn now to Plaintiff's general common law negligence arguments. To establish negligence under Mississippi law, a plaintiff must show the defendant owed a duty to the plaintiff, breached that duty, caused damage to the plaintiff, and that breach of the duty was the proximate cause of those damages. *Cox v. Jesco, Inc.*, 2019 WL 5399506, *2 (N.D. Miss. 2019) (citing *Huyn v. Phillips*, 95 So. 3d 1259, 1262 (Miss. 2012)).

Plaintiff argues WareHouse "was negligent for having no notification alarm and/or, in the absence of an alarm, a fire suppression system." [Doc. 134, 2]. In fact, Plaintiff alleges Mississippi law creates a prima facie *presumption* of negligence for warehousemen when bailed goods are

5

destroyed in their possession, citing several cases for support.[2] [Doc. 133, 18]. Plaintiff's interpretation of these cases is misplaced. One need only look to the thorough analysis in the Fifth Circuit's *CFC Fabrication, Inc. v. Dunn Const. Co., Inc.* opinion for a clearer understanding. 917 F.2d 1385 (1990).

*Dunn* centered on a dispute between CFC Fabrication—an equipment rental company—and Dunn Construction—one of CFC's customers. *Id.* at 1387. Dunn rented equipment and "forming materials" from CFC with the acknowledgment it would return these articles at the end of its latest project. *Id.* However, after inventorying the returned items CFC discovered items missing. *Id.* Dunn refused to pay the amount CFC requested for the items, and CFC sued. *Id.*

With that background, the *Dunn* court narrowed its discussion to Mississippi's bailment statute stating, "The bailee is liable for lost or damaged property only upon proof of its negligence." *Id.* at 1388. The court then went further noting, "A bailor can raise a presumption that the bailee was negligent if it shows that the goods were delivered in good condition and were not returned or were returned in a damaged condition." *Id.* CFC presented evidence consisting "almost exclusively of its shipping and receiving orders," and the *Dunn* court found this evidence sufficient for CFC to meet its burden for a prima facie negligence finding. *Id.*

Drawing from *Dunn*, plaintiffs have a low evidentiary bar for stating a prima facie negligence case. *Id.* Plaintiff Shilla has met that burden by showing Defendant WareHouse received Plaintiff's goods in "good condition and were not returned or were returned in a damaged condition." *Dunn*, 917 F.2d at 1388. Plaintiff delivered its auto parts to WareHouse who had sole possession when the warehouse burned making Defendant's return of the goods impossible.

---

[2] Plaintiff cites *Milner Enterprises, Inc. v. Jacobs*, 207 So. 2d 85, 90 (Miss. 1968); *Yazoo & M.V.R. Co. v. Hughes*, 47 So. 662, 663 (Miss. 1908); and *Harry Dole Dodge of Pascagoula, Inc. v. Cox*, 246 So. 2d 918, 919 (Miss. 1971).

6

However, the analysis does not end when Plaintiff obtains a prima facie finding but continues before a *presumption* of negligence is found.

Generally, "a bailee possessing the bailed property exclusively is presumed negligent." *Dunn*, 917 F.2d at 1388 (citing *Staheli v. Farmers' Coop.*, 655 P.2d 680, 683 (Utah 1982)). However, a defendant needs "only to *produce* evidence of due care to rebut any presumption of negligence that might have arisen." *Id.* at 1399 (citing *Hamm v. F.B. Walker & Sons*, 198 So.2d 817, 817 (Miss. 1967)) (emphasis added). Therefore, this Court must first determine whether Defendant WareHouse presented evidence that met this low burden. The Court finds WareHouse has presented sufficient evidence in the form of deposition testimony. Sasha Hyde specifically testified she thought the warehouse's HSI security system had a fire alarm component. Doc. No. 133-12, pp. 14-16. By producing this evidence— "evidence of due care rebutting any presumption of negligence that might have arisen"— the Court finds WareHouse has overcome the negligence presumption. *Dunn*, 917 F.2d at 1388.

Here in the analysis, we turn to the *Milner* case which both parties cite for their arguments. *Milner Enterprises, Inc. v. Jacobs*, 207 So. 2d 85 (Miss. 1968). In short, the *Milner* plaintiff—the bailor—leased an airplane hangar from the defendant bailee when the hangar burned down and destroyed the plaintiff's aircraft. *Id.* at 87. The plaintiff sued and argued the defendant negligently operated the hangar without fire protection along with several other alleged duty breaches. *Id.* Noting this, the *Milner* court stated:

> When a bailee in an action for nonreturn of an article shows that it was destroyed by fire under circumstances fully disclosed, and not suggestive of any want of due care, it devolves on the bailor seeking to hold him responsible to turn the scale by some evidence inculpatory of the defendant.

*Id.* at 90 (quoting *Meridian Fair & Exposition Ass'n v. North Birmingham St. Ry.*, 12 So. 555 (Miss. 1893)). Here, WareHouse has fully disclosed the impossibility of returning Plaintiff's goods

7

because both parties concede a lightning strike caused the fire which burned the goods. The primary dispute then exists in the second required showing: that the circumstances resulting in the loss were "not suggestive of *any* want of due care." *Id.* (emphasis added). Again, this is a low bar requiring only that the defendant provide evidence that it took any due care while in possession of the plaintiff's goods. WareHouse has successfully shown this through Sasha Hyde's testimony which was previously discussed. Therefore, it now devolves on Plaintiff Shilla "to turn the scale by some evidence inculpatory of the defendant" before it is entitled to the negligence presumption. *Id.* It has failed to do so at this juncture.

Despite the lack of a negligence presumption, WareHouse requests this Court find no issue of material fact concerning legal duties exists in this case. However, as the *Jordan v. Federal Compress* case clarified, a jury is the proper arbiter for a question of fact such as this; therefore, this Court denies summary judgment on the negligence claim.

### *Plaintiff's Breach of Contract Claim*

Plaintiff's next claim derives from the alleged breach of the Warehouse Agreement. Both parties rely heavily on this Agreement in their briefs, especially the clause stating, "WareHouse 72 does not cover damage in the event of an act of God while in our possession. Tornado, wind, Hurricane, Flooding, **Fire from lightning strike**, Earthquake, etc." [122, 19] (emphasis original). Although poorly drafted and certainly indefinite in many of its terms, the Court need not look outside the four corners of the Agreement to understand both parties' intent concerning insurance—neither intended an act of God to be covered.

Plaintiff, however, focuses more on the section entitled "Warehouse Services" with the more specific clause stating, "Safely store all freight in assigned racks and record dates of shipments and lot numbers associated with shipment in warehouse software." [134, 23]. *Dunn*

8

again provides guidance. *CFC Fabrication, Inc. v. Dunn Const. Co., Inc.*, 917 F.2d 1385, 1390 (5th Cir. 1990). There, the Fifth Circuit unequivocally found, "A bailor must prove the bailee's negligence unless a contract between the parties *expressly* alters the bailee's obligation," otherwise, a bailee "is only required to use reasonable care and diligence in carrying out the contract of bailment." *Id.* (quoting *Seward v. First Nat'l Bank*, 8 So.2d 236, 237 (Miss. 1942)) (internal quotation marks omitted) (emphasis original).

Since the Warehouse Agreement contained express language limiting WareHouse's liability to damages other than acts of God, Plaintiff cannot attempt to alter that limitation without express language to the contrary nor does it "impliedly impose liability upon [WareHouse] for all other kinds of damage." *Id.* (citing *Greenville Insulating Bd. Corp. v. McMurray*, 145 So. 730 (Miss. 1933)). Therefore, because WareHouse's obligations are unalterable without express language and no such language exists, no genuine issue of material fact exists. Accordingly, this Court grants Defendant WareHouse's Motion for Summary Judgment with respect to Plaintiff's contract claims.

### The Washingtons' and the Hydes' Motion for Summary Judgment

Presently before the Court is Defendants Cayce and Michelle Washington and Frank and Sasha Hyde's ("the Individual Defendants") Motion for Summary Judgment. [121]. Upon due consideration, the Court finds the motion should be granted.

This Motion presents two issues for this Court's consideration: whether Plaintiff's claims against the Individual Defendants sounding in tort and contract law maintain any questions of material fact. Disposition of these issues does not require separate analyses; therefore, this Court will analyze both simultaneously.

Plaintiff Shilla contends "each and every individual defendant personally participated in actions, decisions and omissions that caused the fire" in question. [Doc. 136]. Although explicitly stating it is no longer pursuing corporate veil piercing claims, Plaintiff is still—albeit indirectly—asking this Court to pierce WareHouse's corporate veil. Plaintiff is simply shrouding its veil piercing claim through its reliance on *Lancaster v. Miller*. [Doc. 136, 4]. There, the plaintiff purchased a house in reliance on the defendant LLC's representations that it was completely remodeled even though it had substantial plumbing, electrical, and roofing problems. *Lancaster v. Miller*, 319 So.3d 1174, 1176-77 (Miss. Ct. App. 2021). The plaintiff then attempted to pierce the LLC's corporate veil but failed, and—on appeal—the Mississippi Court of Appeals narrowed the issue from veil piercing to "misrepresentation." *Id.* at 1175. *Lancaster* concerned outright fraud; circumstances significantly different from the case sub judice because Plaintiff does not allege the Individual Defendants perpetrated any fraud. *Id.* With that understanding, the Court analyzes Plaintiff's claims under the corporate veil piercing doctrine rather than through the lens of *Lancaster*.

Piercing the corporate veil is an extraordinary measure used only "for factual circumstances which are clearly extraordinary." *Gray v. Edgewater Landing, Inc.*, 541 So.2d 1044, 1046 (Miss. 1989). In a general sense, the Mississippi Supreme Court has found "the fact that the principal shareholder oversees the day-to-day operation" of the business "does not justify the disregard of the corporate entity," nor will the "corporate fiction . . . be disregarded in cases of simple negligence." *Id.* More specific to the case at hand, "Since contract liability arises from an essentially consensual relationship, courts generally decline to disregard the corporate entity, choosing instead to enforce the contract as written." *Id.* Although this precedent falls squarely in favor of the Defendants, a veil piercing analysis will provide greater clarity. To successfully pierce

10

the veil, the moving party must show: "(a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities"; and "(c) a demonstration of fraud or other equivalent misfeasance." *Id.* at 1047.

Plaintiff cannot show a frustration of contractual expectations because it signed a contract with WareHouse, not Cayce Washington. Cayce signed the document not in his individual capacity but as an owner of WareHouse as evidenced by the contract signature block's inclusion of "Warehouse 72, LLC" and Cayce's title (i.e., owner) below his name.[3] [Doc. 57-8]. The Court does not perceive Cayce was signing in his individual capacity, and Plaintiff fails under the veil piercing test's first prong.

Plaintiff cannot show WareHouse's members flagrantly disregarded corporate formalities because those members have put forth evidence showing compliance. This evidence includes WareHouse's Certificate of Formation, 2022 Annual Report, and its owners' K-1s. [Doc 57-4, 6, and 7]. Without producing evidence showing otherwise, Plaintiff fails under the veil piercing test's second prong.

As already noted, Plaintiff has not alleged the Individual Defendants perpetrated any fraud or misfeasance against it. The parties were operating under an agreement with full disclosure; that is, WareHouse provided no insurance coverage for acts of God as the parties expressly agreed in the Agreement. [Doc 57-8]. Failing under all three prongs, it is clear Plaintiff's corporate veil piercing claims lack merit, and this Court—upon due consideration—grants summary judgment in favor of the Individual Defendants on both contract and tort issues.

---

[3] The title of President was also located in the signature block under Cayce's name even though he was not President of WareHouse 72, LLC at the time. This is immaterial because Cayce was still signing in his official capacity as a member (or owner) of WareHouse 72, LLC and Plaintiff Shilla drafted the document.

11

## Plaintiff Shilla's Motions for Summary Judgment

Presently before the Court is Plaintiff's motions for partial summary judgment on the issues of duty and damages. [124, 123]. Upon due consideration, the Court finds these motions should be denied. The Court will address each in turn.

### A. *Motion for Partial Summary Judgment on the Issue of Duty*

This Court fully analyzed the duty issue in its review of Defendant WareHouse 72's Motion for Summary Judgment. As previously stated, the jury is the appropriate arbiter of that issue, and summary judgment would be inappropriate in these circumstances. *See* supra; *Jordan v. Federal Compress & Warehouse Co.*, 126 So. 31, 33 (Miss. 1930). The same analysis is true here; therefore, Plaintiff's Motion for Partial Summary Judgment on the Issue of Duty is denied.

### B. *Motion for Partial Summary Judgment on Damages*

This Motion presents a single issue; namely, whether a genuine question of material fact exists concerning Plaintiff's damages. However, "the assessment of damages presents a question of fact to be determined by the jury." *Giles v. State Farm Fire & Cas. Co.*, 2023 WL 5598991, *3 (S.D. Miss. Aug. 29, 2023) (quoting *Greyhound Corp. v. Dewey*, 240 F.2d 899, 904 (5th Cir. 1957)).

Yet, Plaintiff asks this Court to predetermine this case's damage amount based on numbers Plaintiff provided. Although the factual circumstances are dissimilar, the Fifth Circuit's reasoning from *Southern U.S. Trade Ass'n v. Guddh* provides appropriate guidance for determining damage amounts at the summary judgment stage of litigation.

*Guddh* was a defamation case between an individual and the Southern United States Trade Association ("SUSTA"), along with two of its high-level officials. *Southern U.S. Trade Ass'n v. Guddh*, 565 Fed.Appx. 280, 281 (5th Cir. 2014). After battling the defendant's "discovery abuses

and violation of court orders," the district court struck the defendant's pleadings and then granted the plaintiffs' motions for summary judgment on liability and damage amount, simultaneously holding the defendant liable. *Id.* Applying Louisiana law which required the plaintiff to prove damages by a preponderance of evidence, the *Guddh* court found the plaintiffs "provided sufficient evidence of its damages to satisfy this burden," including expenditures for combatting negative press, and "affidavits from other individuals in the trade community" confirming defendant's "defamatory comments cast SUSTA and its employees in a negative light." *Id.* at 283.

In the instant case, Plaintiff's evidence concerning its damage amount is slim compared to that in *Guddh*. Plaintiff offers only one spreadsheet allegedly showing the products stored in the warehouse and their value at the time of the fire. [Doc. 123-1]. Plaintiff then supports that spreadsheet's authenticity with its own testimony. [Doc. 123]. This evidence falls below the implicit standard found in *Guddh* whose plaintiffs provided more than one piece of evidence with corroboration from outside sources. 565 Fed.Appx. 280, 281. Considering this and the general preference for juries to determine damage amounts, the Court denies Plaintiff's Motion for Partial Summary Judgment on Damages.

### Defendants' Motion to Exclude Opinions of Phillip Keena

The final motion before the Court is Defendants' Motion to Exclude Plaintiff's Expert, Phillip A. Keena. [Doc. 117]. In a general sense, Defendants' Motion seeks to exclude or limit Mr. Keena's testimony to ensure Mr. Keena does not provide impermissible legal conclusions.

Mr. Keena holds two degrees relevant to the issue at hand, an associate degree in Fire Administration and a bachelor's degree in Fire Protection and Safety Engineering Technology. [138, 6]. The International Association of Arson Investigators (IAAI) has also certified him as a fire investigator, and he has been a firefighter for thirty-one years. [138, 6]. He currently works for

Rimkus, a forensic engineering company. [Doc. 117-1; Depo line 19-24]. Defendants deposed Mr. Keena on May 27, 2024. [Doc. 118, 2]. During that deposition, Mr. Keena disclaimed substantial portions of his expert report, going through it and scratching out those parts he deemed "incorrect." [Doc. 118, 5]. Therefore, Mr. Keena will be prohibited from contradicting this amended expert report while testifying.

It is clear from his testimony Mr. Keena is qualified. As a result, the Court finds his knowledge will be helpful to the trier of fact to understand the evidence or to determine a fact in issue in this case, and his testimony satisfies both Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Accordingly, the Court finds Plaintiff's expert is qualified to testify as to the matters outlined in his amended expert report, and any arguments for exclusion of testimony, go to the "weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996).

The Court also notes it is axiomatic that "[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009)). Accordingly, Mr. Keena will not be permitted to offer legal conclusions at trial and counsel will not seek to elicit any such testimony. The Court does note, however, that while experts cannot offer conclusions of law, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a); *Goodman*, 571 F.3d at 399.

That said, the Court is confident it can protect against the possibility of objectionable expert testimony at trial without resorting to a blanket ban on all expert testimony. See, e.g., *Mears v. Jones*, No. 1:17-CV-6-KS-MTP, 2019 WL 3483157, at *1 (S.D. Miss. July 31, 2019). The parties

may offer timely objections to any such testimony at trial. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). The Court thus grants Defendants' Motion to Exclude to the extent it seeks to prohibit testimony constituting a legal conclusion. The Court finds any further requested limitations premature and therefore denies them at this juncture.

### *IV. Conclusion*

For all the foregoing reasons, the Court finds Warehouse 72's Motion for Summary Judgment should be denied in part and granted in part; the Individual Defendants' Motion for Summary Judgment should be granted; Plaintiff Shilla's Motions for Summary Judgment should be denied; and Defendants' Motion to Exclude Plaintiff's Expert, Phillip Keena should be granted in part as herein described.

An order in accordance with this opinion shall issue this day.

THIS the 23rd day of September, 2024.

                                                                      /s/ Glen H. Davidson
                                                      SENIOR U.S. DISTRICT JUDGE